1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                          EASTERN DISTRICT OF CALIFORNIA

7

8    UNITED STATES OF AMERICA,                  CASE NO. 1:13-cv-00640-AWI-BAM

9              Plaintiff,                        ORDER DENYING CLAIMANT'S
                                                 MOTION TO DISMISS FOR LACK OF
10        v.                                     PROBABLE CAUSE TO INSTITUTE
                                                 ACTION
11   APPROXIMATELY $28,120.00 IN U.S.            (Document #29)
     CURRENCY,
12
              Defendant.
13

14

15

16                                  BACKGROUND

17        In this action the United States filed a civil forfeiture complaint for approximately

18   $28,120.00.   Jean Carlo Labanda ("Claimant") filed a motion to dismiss Plaintiff's complaint for

     lack of probable cause.  Plaintiff filed an opposition to Claimant's motion to dismiss.  For the
19
     reasons discussed below, Claimant's motion shall be denied.
20
                                       FACTS
21
          United States Postal Inspectors seized the Defendant currency on November 14, 2012, at
22
     2601 East Olive Avenue in Fresno, California.   The currency is in the custody of the United
23
     States Marshals Service, Eastern District of California.   See Complaint at ¶ 2.
24
          On November 14, 2012 United States Postal Inspectors ("Postal Inspectors") located an
25
     express mail parcel that had been left in the incoming mail addressed to a Fresno Domicile.   The
26
     parcel had a United States Postal Service return stamp and the letters "IA" handwritten across the
27
     recipient's address on the label.   The "IA" notice indicated to Postal Inspectors that there was an
28

1  insufficient address listed on the parcel to make a delivery.   Upon review, Postal Inspectors

2  noticed the parcel contained dense packaging.  See Complaint at ¶ 6.

3        In the Postal Inspector's training and experience, the dense packaging was consistent with

4  parcels involved with the trafficking of contraband, narcotics or currency involved in contraband

5  narcotics.  See Complaint at ¶ 6.   The parcel was a flat rate express mail parcel measuring

6  approximately 14 inches in length, 12 inches in height, and 3 ½ inches in width.  It weighed

7  approximately four pounds and fourteen ounces.  The mail parcel had on it a postage paid

8  certificate in the amount of $39.95.  The mail parcel was addressed to "Marquis Sutton, 398 W.

9  Hagler, Fresno, CA  93711".   The mail parcel's label was handwritten, which is not customary

10 with most legitimate business mailings.   Postal inspectors were unable to find the addressee name,

11 Marquis Sutton, associated with the address listed by Claimant.  See Complaint at ¶ 7.   The parcel

12 did not have a telephone number for the addressee listed on the mailing label.  See Complaint at ¶

13 9.

14       The mail parcel had a return address of "Jean Labanda, 2 Palisade Avenue, Cliffside Part,

15 NJ 07010.  See Complaint at ¶ 7 & ¶11.   There was no apartment number listed on the hand

16 written return address.  See Complaint at ¶ 15.   On the sender section of the return address a

17 telephone number was listed, and Postal Inspectors telephoned Claimant at that number.

18 Claimant stated that he had sent a package to Fresno to purchase a truck.   Claimant stated that he

19 wrote the wrong name for the recipient.  Inspectors then obtained consent from Claimant over the

20 telephone to open the parcel.

21       Postal Inspectors opened the parcel and found a pink purse wrapped in a clear cellophane

22 bag. Within the purse was a t-shirt wrapped around two heat sealed bags.  The bags contained

23 rubber-banded United States currency folded in half.  See Complaint at ¶ 12.   The defendant

24 currency consisted of 1157 $20 bills, making up $23,140.00.   The remaining denominations were

25 seven $100 bills, 38 $50 bills, 211 $10 bills, 53 $5 bills, and five $1 bills.   See Complaint at ¶ 14.

26 The bills amounted to a total of $28,120.00.

27       Postal Inspectors made contact with James Wolfe, who confirmed that he resided at the

28 Hagler address.  See Complaint at ¶ 16.   Mr. Wolfe denied knowing anyone named Marquis

1  Sutton. Mr. Wolfe claimed that the sender had put "some black guy's name on the box," and that

2  the Defendant currency was for the sale of his truck. However, Mr. Wolfe could not recall the

3  name of the person who sent the currency. Mr. Wolfe claimed that some guy named Carlos sent

4  it. <u>See</u> Complaint at ¶ 16.

5        Postal Inspectors later confirmed that both a Marquis Sutton and James Wolfe received

6  mail at the Hagler address. <u>See</u> Complaint at ¶ 16.

7        Wage records for Claimant show that from 2009 to 2010 he received wages from Nissan,

8  Inc. Claimant received gross income of $68,036.89 in 2009. Claimant received gross income of

9  $63,088.12 in 2010. In 2011, Claimant received unemployment benefits of approximately

10 $30,580.00. In 2012, Claimant received unemployment benefits of approximately $22,778.00.

11 <u>See</u> Complaint at ¶ 17.

12 **LEGAL STANDARDS**

13       Under 21 U.S.C. § 881(a), certain property is "subject to forfeiture to the United States."

14 <u>United States v. $133,420.00 in U.S. Currency</u>, 672 F.3d 629, 634 (9th Cir. 2012). Seized money

15 is subject to forfeiture if it is "(1) furnished or intended to be furnished in exchange for a

16 controlled substance; (2) traceable to such an exchange; or (3) used or intended to be used to

17 facilitate a violation of federal drug laws." <u>United States v. Currency, U.S. $42,500.00</u>, 283 F.3d

18 977, 979-80 (9th Cir. 2002) (quoting <u>United States v. $191,910 in U.S. Currency</u>, 16 F.3d 1051,

19 1071 (9th Cir. 1994)).

20       At the pleading stage, a claimant who establishes standing to contest forfeiture may move

21 to dismiss a complaint under Rule 12(b). <u>See</u> Supplemental Rules for Certain Admiralty and

22 Maritime Claims ( "Supplemental Rules") G(8)(b)(i). A complaint for forfeiture in rem is subject

23 to a heightened pleading standard, and must "state sufficiently detailed facts to support a

24 reasonable belief that the government will be able to meet its burden of proof at trial."

25 Fed.R.Civ.P. Supp. R. G(2)(f) ("Rule G(2)(f)"). In addition, forfeiture in rem complaints must

26 also meet the familiar <u>Iqbal</u>/<u>Twombly</u> plausibility standard: "To survive a motion to dismiss, a

27 complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561–63 (2007)).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

This case is governed by the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"). Prior to CAFRA's passage, the Government had the initial burden of establishing probable cause connecting seized property with illegal transactions.   The burden then shifted to claimants to prove, by a preponderance of the evidence, that the money was not connected with illegal drug activity. See United States v. $42,500 in U.S. Currency, 283 F.3d 977, 980 (9th Cir.2002). Congress passed CAFRA, which "transferred the burden of proof to the government and required the government to establish forfeiture by a preponderance of the evidence rather than by the [former] lower probable cause standard." United States v. $80,180.00 in U.S. Currency, 303 F.3d 1182, 1184 (9th Cir.  2002).   The Government's burden of proof is now defined as follows:

> **(c) Burden of proof**.--In a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property--
> (1) the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture;
> (2) the Government may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture; and
> (3) if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense.

18 U.S.C.A. § 983(c).   The burden then shifts to the claimant to prove by a preponderance of the evidence that the claimant is an innocent owner of the property. 18 U.S.C. § 983(d).   The determination of whether the Government has met its burden of proof is based on the aggregate of facts, including circumstantial facts. $42,500 in U.S. Currency, 283 F.3d at 980.

In interpreting CAFRA, the Ninth Circuit has found Section 1615 continues to require that

the government show probable cause to institute a forfeiture action and CAFRA retained 18 U.S.C. § 1615's probable cause pleading requirement.  United States v. $493,850.00 in U.S. Currency, 518 F.3d 1159, 1169 (9th Cir. 2008).   The Government must show that it had reasonable grounds to believe a connection existed between the property and drug activities, supported by more than mere suspicion but less than prima facie proof.   United States v. $30,060 in U.S. Currency, 39 F.3d at 1041. "Each case stands upon its own facts, and the presence or absence of any one fact is not dispositive; indeed probable cause is not an exacting standard." $42,500 in U.S. Currency, 293 F.3d at 980 (citation omitted).    Probable cause to believe that the property is involved in some illegal activity is not enough, and the government must have probable cause to believe that the property is involved in the activity subjected to the specific forfeiture statute it invoked. 19 U.S.C. 1615; $493,850.00 in U.S. Currency, 518 F.3d at 1169; $191,910 in U.S. Currency, 16 F.3d at 1071.  Probable cause may only be based upon information gathered before the complaint was filed.  $186,416.00 in U.S. Currency,  590 F.3d at 954; $493,850.00 in U.S. Currency, 518 F.3d at 1169.

At trial, the government must establish, by a preponderance of the evidence, that the property is subject to forfeiture and that there was a substantial connection between the property and the alleged offense in order to prevail. 18 U.S.C. 938(c) (1 & 3). The government may use evidence gathered after the filing of the complaint to satisfy its burden at trial. 18 U.S.C. 983(c)(2).

## DISCUSSION

Plaintiff's complaint alleges a number of factors to show probable cause that the $28,120.00 seized was related to a transaction involving controlled substances.

### A.    Large Amounts of Currency

First, the complaint alleges that the seized property was in the amount of $28,120.00. After receiving permission from the Claimant, Postal Inspectors found $28,120.00 in cash.  The Ninth

Circuit has recognized that large amounts of money alone may be "strong evidence that money was furnished or intended to be furnished in return for drugs." United States v. $29,959.00 in U.S. Currency, 931 F.2d 549, 553 (9th Cir.1991); see also U.S. v. $93,685.61 in U.S. Currency, 730 F.2d 571, 572 (9th Cir. 1984). A large amount of money standing alone, however, is insufficient to establish probable cause. Currency, U.S. $42,500.00, 283 F.3d at 981-82.

Here, there were no drugs or drug paraphernalia found. However, the fact remains that approximately $28,120.00 is a large sum of money to send via express mail to purchase a vehicle from a person across the country. In the totality of the circumstances, the large sum of money serves as strong evidence that the money was furnished or intended to be furnished in return for drugs and illegal activities.

**B.   Discrepancies in stories**

Discrepancies in Claimants' and others' stories may be factors to consider in determining probable cause. United States v. $22,474.00 in U.S. Currency, 246 F.3d 1212, 1216-17 (9th Cir. 2001). Even if it is considered not unusual to send cash money to another state to purchase a vehicle, the purchaser, Claimant, and the seller, Wolfe, had conflicting stories. First, the Claimant could not identify the model of the truck he was purchasing. See Declaration of United States Postal Inspector. Second, the Claimant and alleged seller Wolfe had conflicting stories on how they were introduced to one another. Third, the two had conflicting stories regarding which one of them actually wanted the transaction to be done in cash. Finally, the alleged seller, Wolfe, stated that the purchaser was someone named "Carlos" and did not refer to the Claimant's actual name. The Court finds the inconsistent stories tend to support the inference that the currency was related to a drug transaction.

**C.   The Concealing and Packaging of Defendant Currency**

Courts have recognized that the manner in which the currency is bundled and wrapped weighs in favor of the court finding that the currency is substantially connected to an illegal drug

transaction. <u>United States v. Approximately $77,000.00 in U.S. Currency</u>, 2012 WL 1196498 (E.D. Cal. 2012).  Courts generally give special weight the currency's denominations when the currency is in small denominations, in non-uniformed bundles, bundled with rubber bands and bundled without bank wrappers.  <u>United States v. Real Property Located in North Hollywood</u>, 2009 WL 3770639 at *4 (C.D. Cal. Nov 10, 2009).

The complaint and declaration state that the Defendant Currency was rubber-banded and concealed in two heat-sealed food saver bags, then wrapped in a t-shirt, and then placed inside a pink purse, which itself was wrapped in cellophane. Complaint at ¶ 12. The defendant currency consisted of one-thousand and one-hundred-fifty-seven (1,157) $20 bills, seven (7) $100 bills, thirty-eight (38) $50 bills, two-hundred-eleven (211) $10 bills, fifty-three (53) $5 bills, and five (5) $1 bills. Neither Claimant nor Wolfe offered any evidence to show why the money was in these small denominations. Claimant did not include any documents or correspondence in the mail parcel, such as a purchase contract for the truck. The manner in which the currency was bundled, the small denominations, lack of bank wrappers, and absence of any written document weighs in favor of finding that the currency was connected to an illegal drug transaction.

**D.    The Nexus to Drugs**

Several factors support finding a nexus to drugs. The Ninth Circuit has recognized the use of cellophane to wrap money to be significant.  <u>United States v. Currency, U.S. $42,500.00</u>, 283 F.3d 977, 982 (9th Cir. 2002).  "Unlike a purse or money pouch, cellophane is not a normal repository for carrying large amounts of money. Rather cellophane, which is largely impermeable to gas, is commonly used to conceal the smell of drugs and avoid detection by drug dogs." <u>Id</u>. Courts have also found a nexus to drugs when the currency is wrapped in fabric softener sheets and plastic wrap. <u>United States v. $129,727.00 U.S. Currency</u>, 129 F.3d 486, 491 (9th Cir.1997). Here, the Defendant Currency was inside a pink purse that was wrapped in cellophane. The Claimant provides no evidence to suggest why the money was packaged in this unusual manner.

While the Claimant may be able to explain that he accumulated the large amount of money given his wages from Nissan and unemployment benefits, Claimant fails to explain the need to store money wrapped in cellphone. Such an action supports the strong inference that the currency was designed to avoid detection. Thus, such an action supports the inference that the currency is drug related.

The aggregate of facts raise more than a mere suspicion of a connection between the Defendant Currency and drugs. Plaintiff's complaint establishes probable cause to initiate civil forfeiture. While Claimant has offered arguments on another way to look at the evidence, this Court cannot consider credibility or arguments at this time.

## ORDER

Based on the foregoing reasons, Claimant's motion to dismiss Plaintiff's complaint is DENIED.


IT IS SO ORDERED.

Dated:   December 23, 2014          _____
                                                    SENIOR  DISTRICT  JUDGE